IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL FEINBERG, | ) |
| *Plaintiff*, | ) ) ) |
| - against - | ) Case No. 18-cv-____ ) |
| ABBOTT LABORATORIES, | ) **JURY TRIAL DEMANDED** ) ) |
| *Defendant*. | ) |

## COMPLAINT

Plaintiff CAROL FEINBERG ("Feinberg" or "Plaintiff"), by her undersigned counsel, as and for her Complaint against defendant ABBOTT LABORATORIES ("Abbott" or "Defendant"), states as follows:

### SUMMARY OF THE CASE

1. This action concerns a valuable artwork (the "Artwork") that has been displayed in Plaintiff's New York home for more than 25 years.

2. Defendant has wrongfully claimed title to the Artwork.

3. Plaintiff seeks to have Defendant's claims to the Artwork resolved by this Court, and requests a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

### PARTIES, JURISDICTION, AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332, due to the complete diversity of the parties and because the amount in controversy exceeds $75,000.

1

5. This Court has jurisdiction over Defendant because it conducts business in Illinois, both in connection with the acts giving rise to this lawsuit and during the general course of its affairs, and has sufficient minimum contacts in Illinois, or otherwise intentionally avails itself of the markets within Illinois, through the promotion, sale, and marketing of its services in Illinois, to render the exercise of jurisdiction by this Court proper and necessary.

6. Venue is proper in this District pursuant to 28 U.S.C § 1391 because Defendant's corporate headquarters is in the Northern District of Illinois and because Defendant claims that a substantial part of the acts that gave rise to the present dispute occurred in the Northern District of Illinois.

## PARTIES

### The Plaintiff

7. Carol Feinberg is an individual who resides in New York, New York.

### The Defendant

8. On information and belief, Abbott Laboratories is a corporation organized under the laws of the State of Illinois, with headquarters at 100 Abbott Park Road, Abbott Park, Illinois, 60064.

## FACTUAL ALLEGATIONS

9. In or about 1993, Plaintiff purchased the Artwork from a high-end art gallery.

10. Plaintiff paid a fair price for the Artwork, a sum totaling hundreds of thousands of dollars.

11. Plaintiff purchased the Artwork in good faith.

12. Plaintiff purchased the Artwork without notice of any claims of Defendant to title to the Artwork.

13. At the time of Plaintiff's purchase of the Artwork, Defendant had not provided notice to anyone concerning a claim to title to the Artwork.

14. At the time of Plaintiff's purchase of the Artwork, no other person or entity had provided notice to anyone concerning a claim to title to the Artwork.

15. In 2002-2003, the Artwork was included in a public exhibition at an important museum in the United States (the "Museum Exhibition").

16. The Museum Exhibition subsequently traveled to two other important U.S. museums, one in Washington, D.C., and the other in the Midwest.

17. In 2003, an important art critic reviewed the Museum Exhibition in an article published in a major newspaper with national and international distribution (the "Mainstream Article").

18. The Mainstream Article included a color image of the Artwork.

19. Also in 2003, a leading weekly publication on art and antiques published an article on the Museum Exhibition and the work of the artist who created the Artwork (the "Industry Article").

20. The Industry Article included an image of the Artwork, identifying it as being from a "Private Collection."

21. In 2003, a major Midwestern newspaper with national circulation published an article concerning the Museum Exhibition's opening in Washington, D.C.

22. Later in 2003, the same newspaper published another article concerning the Museum Exhibition's opening at its Midwestern museum venue.

23. The Museum Exhibition was covered by numerous other industry, regional, and national publications, at least one of which included another photograph of the Artwork, indicating its inclusion in the Museum Exhibition.

24. Also in 2003, the Artwork was included in a show at a prominent art gallery in New York (the "Gallery Exhibition").

25. The Gallery Exhibition was also covered by industry, regional and national publications, and at least one major magazine noted the Gallery Exhibition's inclusion of the Artwork.

### Defendant's Prior, Related Claims

26. Upon information and belief, at some point prior to 2002, Defendant claims to have acquired a number of works of art, including the Artwork (collectively the "Abbott Claimed Artworks").

27. Upon information and belief, also prior to 2002, Defendant sold, gifted, or otherwise transferred certain Abbott Claimed Artworks.

28. Upon information and belief, in or around 2002, Defendant retained the services of an appraiser (the "Appraiser") to value the Abbott Claimed Artworks.

29. Upon information and belief, at that time, the Appraiser advised Defendant of the Appraiser's belief that some or all of the Abbott Claimed Artworks were inauthentic.

30. Upon information and belief, in or about August 2003, Defendant filed a police report with the Lake County Sheriff's Department concerning the alleged theft of one of the Abbott Claimed Artworks (the "Prior Reported Work").

31. Upon information and belief, at that time, Defendant alleged that someone had stolen Defendant's authentic Prior Reported Work and replaced it with a forgery.

32. Upon information and belief, Defendant believed that an art conservator (the "Conservator") with whom it had entrusted the Prior Reported Work sometime prior to March 1998, had converted the Prior Reported Work and made a copy.

33. Upon information and belief, Illinois law enforcement authorities made inquiries concerning the Conservator in the course of investigating Defendant's allegation that the Prior Reported Work had been stolen.

34. Upon information and belief, no charges against the Conservator were ever filed.

35. Upon information and belief, no law enforcement authorities have ever charged any person with stealing the Prior Reported Work or any other Abbott Claimed Artworks.

36. Upon information and belief, the case filed with the Lake County Sheriff's Department concerning the Prior Reported Work was closed.

37. Upon information and belief, in or around 2003, Defendant contacted the Federal Bureau of Investigations (the "FBI") concerning the Prior Reported Work.

4841-7786-3024, v. 6

38. Upon information and belief, in 2003, the FBI publicized a Theft Notice on its website concerning the Prior Reported Work stating that "someone had switched a forgery" for it.

**Defendant's Pursuit of Its Alleged Claim to the Artwork**

39. Upon information and belief, Defendant possesses no records that reflect its purchase of the Artwork.

40. A large number of owners of valuable artworks purchase insurance to cover loss or damage to their artworks.

41. At all times during which Defendant claims to have owned the Artwork, insurance covering loss or damage to fine art like the Artwork was available for purchase.

42. Upon information and belief, Defendant possesses no records reflecting that it insured the Artwork.

43. Upon information and belief, Defendant filed no insurance claim in connection with its alleged loss of the Artwork.

44. Upon information and belief, Defendant, or a representative of Defendant, contacted a museum where the Artwork was exhibited, seeking information concerning the Artwork.

45. Upon information and belief, Defendant, or a representative of Defendant, also contacted a former principal of the high-end gallery that sold the Artwork to Plaintiff, seeking information concerning the Artwork.

46. Upon information and belief, Defendant contacted the Lake County State's Attorney's Office to investigate its claims concerning the Artwork.

4841-7786-3024, v. 6

47. Upon information and belief, Interpol did not receive any report concerning the Artwork until 2016.

48. Upon information and belief, Defendant did little or nothing to pursue the alleged theft of the Artwork after learning of the alleged theft of the Prior Reported Work no later than 2003.

49. Upon information and belief, the Lake County State's Attorney's Office did not find any evidence of the alleged theft of the Artwork.

50. Upon information and belief, the Lake County State's Attorney's Office is not pursuing an investigation of Defendant's claims concerning the Artwork.

51. In 2018, counsel for Defendant communicated to counsel for Plaintiff that Defendant claimed to own the Artwork.

52. To address Defendant's claims, Plaintiff filed this action.

**Abbott's Claims Lack Merit**

*The Entrustment Doctrine Bars Defendant's Claim to the Artwork*

53. Upon information and belief, sometime prior to 1993, Defendant voluntarily consented to the transfer, or did transfer, possession of the Abbott Claimed Artworks for delivery to the Conservator thereby entrusting the works of art to the Conservator.

54. Upon information and belief, the Conservator maintained a place of business on a main street in Evanston, Illinois with a storefront and near shops engaged in retail sales.

4841-7786-3024, v. 6

55. Upon information and belief, the Conservator was also an art merchant who regularly engaged in the purchase and sale of goods of the kind entrusted by Defendant, namely, works of art, thereby regularly dealing in such goods.

56. Upon information and belief, the Conservator is alleged by Defendant to have sold the Abbott Claimed Artworks entrusted to it by Defendant, including the Artwork, to one or more purchasers (each a "Purchaser").

57. Upon information and belief, the Purchaser of the Artwork was a buyer in the ordinary course of business.

58. Upon information and belief, the Purchaser of the Artwork acquired good title to the Artwork.

### *The Statute of Limitations for a Claim to Recover Personal Property Bars Defendant's Claim*

59. Upon information and belief, Defendant discovered, or reasonably should have discovered, its alleged loss of the Artwork long ago, and in no event later than 2002, when the Appraiser evaluated the Abbott Claimed Artworks.

60. Upon information and belief, Defendant reasonably should have discovered Plaintiff's possession of the Artwork no later than when it was featured in the Museum Exhibition in 2002-2003.

61. Upon information and belief, Defendant reasonably should have discovered Plaintiff's possession of the Artwork no later than when it was featured in the Gallery Exhibition in 2003.

62. Upon information and belief, Defendant reasonably should have discovered Plaintiff's possession of the Artwork when the Artwork's exhibition was widely reported in the media in 2002-2003.

63. As a result of the inquiries to the Museum and others, Defendant did ultimately discover that Plaintiff possessed the Artwork.

64. Defendant waited approximately 15 years from when it discovered or reasonably should have discovered that Plaintiff possessed the Artwork to raise a claim to the Artwork with Plaintiff.

## *The Equitable Doctrine of Laches Bars Defendant's Claim to the Artwork*

65. Upon information and belief, Defendant was on notice of the alleged theft of the Abbott Claimed Artworks, and their alleged replacement with forgeries no later than 2002.

66. Defendant failed to undertake reasonable diligence with respect to the Artwork.

67. Upon information and belief, Defendant did, in or around 2003, pursue claims in connection with another Abbott Claimed Artwork called into question by the Appraiser – the Prior Reported Work.

68. Upon information and belief, Defendant did not, following the Appraiser's communication, report the loss of the Artwork or file a claim for the Artwork with any governmental or nongovernmental entities that track claims to stolen artworks.

69. Upon information and belief, Defendant did not list the Artwork on a stolen art database until approximately 2016.

4841-7786-3024, v. 6

70. Defendant had the opportunity to locate and make a claim to the Artwork no later than 2003, following the Artwork's inclusion in the Museum Exhibition, the Gallery Exhibition, and the widespread press coverage of those exhibitions.

71. Defendant did not give notice to Plaintiff of its alleged claim to the Artwork until approximately April 2018.

72. Defendant unreasonably delayed in asserting claim of title to the Artwork.

73. The Artwork was purchased by Plaintiff more than 25 years ago.

74. At the time of Plaintiff's purchase of the Artwork, Plaintiff had no notice of Defendant's claim nor any other claim to the Artwork.

75. Plaintiff has been prejudiced by Defendant's delay in asserting its alleged claim to the Artwork.

76. Plaintiff's ability to defend against Defendant's threatened claims has been impaired by the passage of time during which Defendant failed to pursue its claims.

77. Among other things, witnesses concerning Defendant's claim to the Artwork, including the Conservator, have died and, upon information and belief, the memories of others with information that may bear on Defendant's claims have faded since Defendant knew or should have known of its claim against Plaintiff.

78. Upon information and belief, documents about the Artwork are no longer available as, among other things, the art gallery that sold Plaintiff the Artwork has closed.

## FIRST CLAIM FOR RELIEF

## DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 and 2202

79. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 78 above as though fully set forth herein.

80. Pursuant to 28 U.S.C. § 2201, this Court has authority to decide actual controversies within its jurisdiction.

81. There is an actual controversy between Plaintiff and Defendant.

82. Plaintiff is the rightful owner of the Artwork.

83. Defendant does not have good title to the Artwork, yet claims good title.

84. Defendant is barred by the statute of limitations from asserting good title to the Artwork, as Defendant was required to pursue its claims within five years of discovery of the circumstances giving rise to any potential claim.

85. Defendant is barred by the doctrine of laches from asserting good title because its unreasonable delay and the resulting prejudice to Plaintiff equitably preclude Defendant from claiming ownership of the Artwork.

86. Defendant's claims are also barred by the entrustment doctrine because, upon information and belief, Defendant delivered the Artwork to an art merchant, thereby entrusting it to a merchant dealing in goods of the same kind, and the Artwork was subsequently acquired from the art merchant by a purchaser in the ordinary course of business.

87. An actual controversy exists between Plaintiff, on the one hand, and Defendant, on the other, and by the terms and provisions of Rule 57 of the Federal Rules

of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

88.     Accordingly, Plaintiff respectfully requests that this Court enter judgment declaring that Plaintiff has proper right, title and interest in and to the Artwork.

### SECOND CAUSE OF ACTION

### SLANDER OF TITLE

89.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 88 as though fully set forth herein.

90.     Upon information and belief, Defendant's, or its representative's, communications concerning the Artwork with a museum at which the Artwork had been displayed disparaged Plaintiff's title to the Artwork by claiming that Defendant is its true and rightful owner.

91.     Upon information and belief, Defendant's, or its representative's, communications concerning the Artwork with a former principal of the gallery from which Plaintiff had acquired the Artwork disparaged Plaintiff's title to the Artwork by claiming that Defendant is its true and rightful owner.

92.     Upon information and belief, such communications and inquiries have cast doubt on Plaintiff's ownership of the Artwork, damaging the value and/or salability of the Artwork.

93. Plaintiff has accordingly suffered special damages, in amount to be determined at trial, but in no event totaling less than One Hundred Thousand Dollars ($100,000.00) due to Defendant's false allegations.

94. Defendant's claims are motivated by malice because, upon information and belief, Defendant knows that any claims Defendant may have allegedly had in or to the Artwork have long been extinguished.

95. Alternatively, Defendant's claims are motivated by malice because, upon information and belief, Defendant has pursued its claim to the Artwork despite a high degree of awareness of the probable falsity of its claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

1. On her First Claim, a declaration that Plaintiff has good, marketable title to the Artwork, free and clear from any claims of Defendant;

2. On her Second Claim, compensatory and punitive damages in an amount to be proven at trial, which shall be well in excess of the jurisdictional minimum, plus interest; and

3. Awarding Plaintiff such other or further relief as the Court deems just and proper.

**[Remainder of Page Intentionally Left Blank]**

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: Chicago, Illinois
August 31, 2018

**CAROL FEINBERG**

By: /s/ Michael D. Lee
One of her attorneys

James L. Komie (ARDC No. 6198089)
Michael D. Lee (ARDC No. 6225432)
Howard & Howard Attorneys PLLC
200 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
(312) 372-4000
jkomie@howardandhoward.com
mlee@howardandhoward.com

John R. Cahill (*Pro hac vice application to be filed*)
Paul S. Cossu (*Pro hac vice application to be filed*)
Cahill Cossu Noh & Robinson LLP
70 West 40th Street
New York, New York 10018
(212) 719-4400
jcahill@cahilllawfirm.com
pcossu@cahilllawfirm.com

14